IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **STEVEN V.[1]**, | Case No. 3:21-cv-1373-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KILOLO KIJAKAZI,** Acting Commissioner of Social Security, | |
| Defendant. | |

Betsy R. Shepherd, 425 Riverwalk Manor Dr., Dallas, GA 30132. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Frederick Fripps, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff Steven V. appeals the final decision of the Commissioner of the Social Security

Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

(DIB) under Title II of the Social Security Act (Act). The Court has jurisdiction to hear this appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions of 42 U.S.C. § 405(g). As explained below, the Court reverses the Commissioner's decision and remands for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

If the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff formerly worked as a deputy sheriff. AR 48. He applied for DIB on July 23, 2018, alleging disability beginning December 26, 2017. AR 25, 173. Plaintiff was born on September 1, 1973, and was 44 years old at the alleged onset date of his disabilities; he is now 49 years old. AR 66, 173. Plaintiff alleges a combination of medical impairments, including post-traumatic stress disorder (PTSD), depression, anxiety, osteoarthritis of the right shoulder, and obesity, *see* AR 27, 90, and an inability to work due to PTSD. AR 66-67, 199.

The Commissioner denied these claims on July 11, 2019, and again upon reconsideration on April 22, 2020. AR 25. Plaintiff then filed a written request for hearing before an administrative law judge (ALJ), received on June 19, 2020. *Id.* Plaintiff participated in a telephone hearing with his attorney, ALJ Derek Johnson, and a vocational expert (VE) on November 5, 2020. *Id.* In a decision dated November 30, 2020, the ALJ found that Plaintiff is not disabled. AR 22-38. Plaintiff timely appealed the ALJ's decision to the Appeals Council, which denied his request for review on July 27, 2021. AR 1-6. The Appeals Council's denial made the ALJ's opinion the final decision of the Commissioner. Plaintiff appeals that decision to this Court. Plaintiff's appeal focuses on his alleged mental disabilities, including PTSD.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step could

be dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks

the following series of questions:

1.   Is the claimant performing "substantial gainful activity?" 20 C.F.R.
     §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
     significant mental or physical duties done or intended to be done for pay
     or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
     such work, she is not disabled within the meaning of the Act. 20 C.F.R.
     §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
     substantial gainful activity, the analysis proceeds to step two.

2.   Is the claimant's impairment "severe" under the Commissioner's
     regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
     impairment or combination of impairments is "severe" if it significantly
     limits the claimant's physical or mental ability to do basic work activities.
     20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
     this impairment must have lasted or be expected to last for a continuous
     period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
     claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
     §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
     impairment, the analysis proceeds to step three.

3.   Does the claimant's severe impairment "meet or equal" one or more of the
     impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
     then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
     416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
     the listed impairments, the analysis continues. At that point, the ALJ must
     evaluate medical and other relevant evidence to assess and determine the
     claimant's "residual functional capacity" (RFC). This is an assessment of
     work-related activities that the claimant may still perform on a regular and
     continuing basis, despite any limitations imposed by his or her
     impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),
     416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
     proceeds to step four.

4.   Can the claimant perform his or her "past relevant work" with this RFC
     assessment? If so, then the claimant is not disabled. 20 C.F.R.
     §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
     his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience,
        is the claimant able to make an adjustment to other work that exists in
        significant numbers in the national economy? If so, then the claimant is
        not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
        404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
        she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a preliminary step to Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status through December 31, 2023. At step one of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 26, 2017, the alleged onset date. AR 27. At step two, the ALJ found that Plaintiff suffered from five severe medically determinable impairments: right shoulder osteoarthritis; obesity; depression; anxiety; and PTSD. *Id.* At step three, the ALJ determined that Plaintiff does not have an

impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 28.

The ALJ next determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) with these limitations:

> [H]e can never crawl or climb ladders, ropes, or scaffolds. He can tolerate occasional exposure to extreme cold and vibration. He can tolerate no exposure to hazards such as unprotected heights and moving mechanical machinery. He can occasionally reach overhead with the dominant right upper extremity. He can understand, remember, and carry out simple, routine tasks in a routine work setting involving few workplace changes. He can never perform rapid pace assembly line work. He can tolerate occasional superficial interaction with the general public. He can tolerate occasional interaction with supervisors and coworkers but not in a cooperative or team effort.

AR 30. In reaching his RFC assessment, the ALJ found that Plaintiff's statements related to the intensity, persistence, and limiting effects of his alleged symptoms were not entirely consistent with the medical evidence and other evidence in the record. AR 31. After finding that "[t]he evidence suggests that the claimant is more active and capable than he alleged" and "[t]he medical evidence does not substantiate the alleged severity of the claimant's condition," AR 31, the ALJ concluded that the evidence did not support a more restrictive RFC assessment. AR 36.

At step four, the ALJ determined that Plaintiff could not perform any of his past relevant work. *Id.* At step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy. AR 37. Accordingly, the ALJ concluded that Plaintiff was not disabled from the alleged onset date through November 30, 2020, the date of the ALJ's decision. AR 38.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to conclude at step three that Plaintiff's mental impairments meet or equal a listed impairment for trauma- and stressor-related disorders,

Listing 12.15; (2) improperly discounting the medical opinions of Drs. Soroush Mohandessi, M.D., and Sarah Eckstein, Ph.D.; (3) improperly rejecting Plaintiff's testimony; and (4) reaching an improper conclusion at step five. Because Plaintiff's argument that the ALJ erred in evaluating whether Plaintiff meets or equals Listing 12.15 depends in part on the testimony of Plaintiff and Drs. Mohandessi and Eckstein, the Court discusses these issues first.

## A. Plaintiff's Testimony

### 1. Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

### 2.  Analysis

The ALJ does not dispute that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and the ALJ made no finding of malingering. Accordingly, the Court moves to the second step of the credibility analysis, at which the ALJ was required to make specific, clear, and convincing findings to support his rejection of Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036. The ALJ found that the objective medical evidence was inconsistent with the degree of impairment Plaintiff reported and asserted that Plaintiff's ability to perform activities of daily living contradicted Plaintiff's allegations. AR 31.

#### a.  Specificity

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009))). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified *which* testimony she found not

credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980

F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806

F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing

reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support

of his or her residual functional capacity determination" but must "specify which testimony she

finds not credible," and the district court may not "comb the administrative record to find

specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494 (quoting *Burrell v. Colvin*, 775

F.3d 1133, 1138 (9th Cir. 2014)); *see also Lambert*, 980 F.3d at 1278 (stating that "provid[ing] a

relatively detailed overview of [a claimant's] medical history . . . 'is not the same as providing

clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'"

(emphasis in original) (quoting *Brown-Hunter*, 806 F.3d at 494)); *Treichler*, 775 F.3d at 1103

(rejecting the argument that because the ALJ "set out his RFC and summarized the evidence

supporting his determination" the court could infer "that the ALJ rejected [petitioner's]

testimony to the extent it conflicted with that medical evidence"); *Smolen*, 80 F.3d at 1284 ("The

ALJ must state specifically which symptom testimony is not credible and what facts in the record

lead to that conclusion."). Instead, the ALJ must "identify the testimony she found not credible"

and "link that testimony to the particular parts of the record supporting her non-credibility

determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Plaintiff contends that the ALJ erred in failing to identify specific aspects of the record

that deviated from specific aspects of Plaintiff's testimony. The ALJ, however, did specify

testimony that he found not credible and cited portions of the record that the ALJ found not to

support that testimony, as follows:

> The evidence suggests that the claimant is more active and capable
> than he alleged. He testified that he did not have any hobbies, that

> he mostly stayed at home other than attending his appointments
> and taking his youngest child to and from school, and that he did
> not really socialize outside of his best friend. According to the
> evidence, however, he enjoyed working out at the gym
> (3F29)[AR 339], he had an active social life with a close group of
> friends, and he engaged in many leisure activities with and without
> his friends (5F2)[AR 446].

AR 31. The ALJ also generally asserted that the medical evidence does not substantiate

Plaintiff's claimed limitations. Whether these proffered reasons are clear and convincing and

supported by substantial evidence is analyzed below.

### b.  Daily Living Activities

Daily living activities may provide a basis for discounting subjective symptoms if the

plaintiff's activities either contradict his or her testimony or meet the threshold for transferable

work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495

F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the

activities need not resemble full-time work; it is sufficient that the plaintiff's activities

"contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant,

however, need not be utterly incapacitated to receive disability benefits, and completion of

certain routine activities cannot discount subjective symptom testimony. *See id.* at 1112-13

(noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits"

(quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does

not need to be 'utterly incapacitated' in order to be disabled."). The Ninth Circuit "has repeatedly

asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery

shopping, driving a car, or limited walking for exercise, does not in any way detract from her

credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001);

*see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be

inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and

noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over several months or years and to treat them as a basis for concluding that a plaintiff is able to work. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

In discussing the functional limitations of Plaintiff's PTSD, the ALJ cited evidence of Plaintiff's ability to live on his own, drive, take his son to school, cook, and care for his children and a puppy as indications that Plaintiff had basic memory abilities, sustained attention skills, and ability to manage himself. AR 29 (citing, *e.g.*, AR 447 (describing no impairment in activities of daily living) and AR 499 ("Daytime function: He feels able to function ok.")). As for Plaintiff's testimony that he avoids socializing and struggles to be around people, the ALJ cited evidence that the ALJ described as indicating only a moderate limitation in interacting with others, such as the ability to go to the gym, take his children to the park and movies, and maintain an active social life. AR 29 (citing, *e.g.*, AR 446 ("[Plaintiff] described having an active social life with a close group of friends. He endorsed current engagement in many leisure activities with (and without) his friends.")).

The ALJ mischaracterized several of these activities. On Plaintiff's ability to care for his children, the ALJ ignores that Plaintiff only has custody of his children every other week, Plaintiff's son wakes Plaintiff up in the morning to take him to school, and Plaintiff does very little before picking up his son in the afternoon. AR 62. On memory and attention, the ALJ spotlights Plaintiff's ability to cook, but Plaintiff reports that he is unable to get through a recipe without reading it multiple times. AR 224, 257. On interacting with others, the ALJ cites an

orthopedic intake form in which Plaintiff reported that he enjoys working out at the gym,

AR 339, 578, but the ALJ offers no evidence about Plaintiff's frequency of gym visits, the

duration of this visits, or how much social interaction Plaintiff might have during his workouts.

In fact, Plaintiff states that he "tr[ies] and go[es] to [the] gym" and exercises three times a week,

but otherwise does not like leaving his house. AR 220, 223-25. Plaintiff's occasional gym visits

do not undermine his testimony about his "depression days," when Plaintiff does not leave the

house, AR 494, or his reported dislike of crowds. Attending a gym is not necessarily inconsistent

with avoiding crowds—there are times a gym is less likely to have crowds. *See, e.g.*, *Bryant v.*

*Comm'r of Soc. Sec. Admin.*, 2020 WL 13470566, at *7 (N.D. Fla. Sept. 15, 2020) (noting that

claimant "goes to the gym when it is empty to avoid people because he does not like crowds");

*John N. v. Berryhill*, 2019 WL 1861311, at *3 (C.D. Cal. Apr. 25, 2019) (noting that claimant

goes to the gym but avoids crowds there); *Guzman v. Colvin*, 2016 WL 4745175, at *4 (D.N.J.

Sept. 12, 2016) (noting that claimant "frequents a gym . . . although he does so only when there

are not too many people around because he feels anxious in crowds"). The ALJ did not follow up

with Plaintiff regarding his reported gym use and instead made an unsupported assumption based

on a medical chart note. Further, Plaintiff should not be penalized for attempting to exercise. *Cf.*

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

        The ALJ also points to Plaintiff's purported social abilities, but Plaintiff does not

socialize beyond his best friend and preestablished relationships. AR 63, 223, 446. The ALJ also

cites to one report of Plaintiff taking his children to the park and movies, AR 301, which could

contradict Plaintiff's anxiety around crowds, but no evidence indicates whether these were

frequent activities or rather "a few isolated instances of improvement over a period of months or

years," which do not form "a basis for concluding [that] a plaintiff is capable of working." *See*

*Garrison*, 759 F.3d at 1017. The ALJ also gave no consideration as to whether these glimpses of functionality merely represented "the unpredictable course of mental illness, [in which] symptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." *Id.* at 1017 n.22 (bracket omitted).

Moreover, Plaintiff's abilities to live on his own, drive, cook, and care for his children do not contradict Plaintiff's testimony that he sleeps poorly because of PTSD-related nightmares, is often too fatigued to sustain focus for long enough to make it through a typical workday, and has bad days of depression several times each week during which he does not leave the house. AR 54-55. The key issue here is whether Plaintiff can sustain activity for a full workday and work week. Plaintiff's attempts to maintain basic levels of care for his family despite the symptoms of his mental illness do not undermine his testimony about the severity of his overall disability. *See Vertigan*, 260 F.3d at 1050. Considered within the context of Plaintiff's PTSD and depression, and without more specific information about their frequency and duration, these listed activities do not give the ALJ a clear and convincing reason supported by substantial evidence to disregard Plaintiff's testimony. The Court finds that the ALJ erred in discounting Plaintiff's subjective complaints.

### c. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (stating that the ALJ may not discount testimony "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence"); 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ cited medical evidence indicating that Plaintiff regularly showed normal speech; logical and linear thought process; alertness and orientation; ability to perform serial testing; and intact attention, concentration, and memory on interview. AR 29 (citing AR 317-18, 325, 331, 349, 447-49, 455, 461, 467, 478, 488-95, 518, 527, 533, 538). The ALJ also noted that Plaintiff often had normal mood and affect. AR 29 (citing AR 317-18, 325, 455, 461, 467, 509, 518, 529). The ALJ relied on this record to question whether the degree of functional impairment Plaintiff professed met his true capabilities. Even if this objective medical evidence does not support Plaintiff's claimed limitations, that alone does not provide a clear and convincing reason to discount his testimony. *Robbins*, 466 F.3d at 883.

The Court concludes that the ALJ erred in discounting Plaintiff's subjective symptom testimony. This error is harmful because, for example, Plaintiff's professed inability to leave the house could result in a high degree of absenteeism. As the VE testified, missing three days of work per month would preclude all work for entry-level jobs and would be "very problematic in most work environments." AR 52. Under this scenario, the ALJ would have had to find Plaintiff disabled.

## B. Medical Evidence

### 1. Standards

Plaintiff applied for benefits on July 23, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical

opinion evidence in the context of DIB. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 404.1520c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency

factors." *Id.* § 404.1520c(b). The Court must, moreover, continue to consider whether the ALJ's

analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32

F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a

treating or examining doctor's opinion, which stems from the special weight given to such

opinions is likewise incompatible with the revised regulations. . . . Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or

inconsistent without providing an explanation supported by substantial evidence." (citation

omitted)).

### 2.  Analysis

#### a.  Dr. Mohandessi

Dr. Mohandessi is Plaintiff's treating psychiatrist. Dr. Mohandessi first saw Plaintiff in

January 2019. Dr. Mohandessi noted that Plaintiff had experienced symptoms of depression,

nightmares, avoidance, flashbacks, and poor sleep, and that Plaintiff met criteria for Major

Depressive Disorder and PTSD. AR 486, 488. Dr. Mohandessi continued to see Plaintiff

throughout 2019 and 2020. In March and May 2019, Dr. Mohandessi noted Plaintiff continued to

have nightmares and heightened anxiety. AR 489-90. Dr. Mohandessi recorded on June 25, 2019

that Plaintiff had been having worsened anxiety, trauma triggers, and nightmares in the two

weeks since his evaluation with Dr. Eckstein. AR 492. Dr. Mohandessi noted in February 2020

that Plaintiff had been diagnosed with obstructive sleep apnea and continued to have high

anxiety, days of depression when he did not want to get out of bed, poor energy, anhedonia,

insomnia, and nightmares. AR 494. Finally, in October 2020, Dr. Mohandessi completed a

mental RFC assessment, opining that Plaintiff would be severely limited in a number of work

functions, had moderately severe limitations in others, and that overall, Plaintiff would be

markedly limited in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence, and pace. AR 775-81.

The ALJ concluded that Dr. Mohandessi's opinions were not persuasive. AR 35. The ALJ gave three reasons for this assessment: (1) Dr. Mohandessi's opined limitations predate the treating relationship, (2) supportability, and (3) consistency. *See id.* 35-36. First, the ALJ found that Dr. Mohandessi's opinions are not well supported because Dr. Mohandessi opined that Plaintiff's limitations had applied since December 2017, but first saw Plaintiff in January 2019. AR 36. This reason is not supported by substantial evidence. There is no requirement, nor does the Commissioner cite any authority, that a doctor may not opine as to limitations that predated the doctor's first visit with a claimant. Moreover, Dr. Mohandessi had reviewed Plaintiff's previous medical records and spoke with Plaintiff's previous treating therapist (Drew Prochniak), AR 489, indicating that Dr. Mohandessi was aware of Plaintiff's mental status since December 2017.

Second, the ALJ found that Dr. Mohandessi's notes do not support severe functional limitations. AR 36. The ALJ points to portions of Dr. Mohandessi's notes that the ALJ found reflect a generally logical and linear thought process, AR 488-95, and normal grooming and speech, AR 488, 493-95. Plaintiff argues that the ALJ inappropriately extrapolated from observations that occurred in a one-on-one clinical environment to conclude that Plaintiff could sustain these observed functions in a real-life work setting. In so doing, Plaintiff argues, the ALJ improperly substituted his own lay opinion for the opinions of Plaintiff's treating provider, taking Dr. Mohandessi's clinical findings and reinterpreting them to support the ALJ's conclusions.

The ALJ does not explain how a doctor's observations of a patient's coherent thought process and social presentation in a clinical setting reduce support for that same doctor's functional assessment of the patient's ability to perform sustained and regular work.[3] For example, the ALJ does not answer whether a logical and linear thought process necessarily implies that Plaintiff could complete a normal workday without interruptions from psychologically based symptoms. Similarly, it is unclear how normal grooming and speech might indicate that Plaintiff could get along with coworkers or peers without exhibiting behavioral extremes. Without further elucidation from the ALJ, the Court concludes that the ALJ's assessment of the "supportability" of Dr. Mohandessi's opinions is not based on substantial evidence.

Third, the ALJ points to the inconsistency of Dr. Mohandessi's opinion with the broader record. To support this finding, the ALJ cites multiple exhibits purportedly showing Plaintiff's normal mental functioning, normal grooming and eye contact, and an ability to perform activities of daily living, such as driving, cooking, caring for himself and his children, maintaining a social life, and going to the gym. The Court has already rejected the ALJ's characterization of Plaintiff's activities of daily living and purported social life. For the same reasons those were insufficient to discount Plaintiff's testimony, they are insufficient to render Dr. Mohandessi's opinion unsupported.

---

[3] The Court notes that such an assumption may distort the purpose of similar medical records. As the Ninth Circuit has noted, "The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record." *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007). A doctor's record-keeping need not express the full extent of a patient's functional impairments every time the patient is seen. Further, observing that a patient is coherent and adequately groomed at appointments does not say everything about the patient's psychological profile or ability to work.

PAGE 18 – OPINION AND ORDER

Regarding the purportedly inconsistent medical evidence, Plaintiff contends that the exhibits cited by the ALJ are from irrelevant examinations focused on Plaintiff's orthopedic issues and not his mental health, or otherwise do not support the ALJ's lay conclusions. *See, e.g.*, AR 318 (emergency room chart for wrist pain, noting that "[h]e is oriented to person, place, and time. He appears well-developed and well-nourished. No distress"). But "consistency" is not so narrowly evaluated. *See* 20 C.F.R. § 404.1520c(c)(2) (describing consistency as determined by a comparison between the medical opinion and "evidence from other medical and nonmedical sources"). And the ALJ does cite evidence from mental health contexts. *See, e.g.*, AR 478 (mental health evaluation chart note describing Plaintiff's "therapeutic strengths" as "[f]lexibility in thinking and behavior," "[g]ood expressive language and communication skills," and well-organized thinking).

The ALJ fails to demonstrate that the medical evidence is inconsistent with Dr. Mohandessi's functional assessments. Looking at other clinical records, the ALJ found that Plaintiff regularly showed normal speech and affect; logical and linear thought process; alertness and orientation; ability to perform serial testing; and intact attention, concentration, and memory on interview. AR 36. The ALJ, however, failed to explain the relevance of Plaintiff's interactions with clinicians in a clinical setting to Dr. Mohandessi's opinion that Plaintiff suffered from severe or marked limitations in his ability to respond appropriately to a work setting. It is unclear how Plaintiff's ability to interact with doctors in a clinical setting is inconsistent with Dr. Mohandessi's opinion regarding Plaintiff's functional limitations at work. *McReynolds v. Colvin*, 2014 WL 801238, at *7 (W.D. Wash. Feb. 28, 2014) (noting that "the ALJ failed to explain the relevance of interactions with clinicians in a clinical setting to Dr. Wheeler's opinion that plaintiff suffered from marked limitation in his ability to respond appropriately to and

tolerate the normal pressures and expectations of a normal work setting" and finding that a "plaintiff's ability to interact with doctors in a clinical setting" does not "discount Dr. Wheeler's specific opinion regarding plaintiff's marked limitations . . . [in] a work setting"). Therefore, the Court concludes that the ALJ failed to explain adequately why his interpretation of Plaintiff's medical records was more correct than the medical opinion of Dr. Mohandessi. *See Reddick*, 157 F.3d at 725 (stating that an ALJ must explain why his own interpretations, rather than those of the doctor, are correct).

The Court finds that the ALJ did not rely on substantial evidence when determining that the inconsistency of Dr. Mohandessi's opinions with the record rendered them unpersuasive. In sum, neither the duration of treatment, nor supportability, nor consistency with the record is a sufficient reason to discount Dr. Mohandessi's opinions.

### b.  Dr. Eckstein

On June 11, 2019, consultative examiner Dr. Eckstein performed a psychodiagnostic consultative examination in which she opined that Plaintiff had PTSD and major depressive disorder. AR 449. In her functional assessment, Dr. Eckstein opined that, among other limitations, Plaintiff would have moderate difficulty performing work activities on a consistent basis without special or additional instructions or accommodations, moderate difficulty maintaining regular attendance in the workplace, marked difficulty in completing a normal workday or work week without interruptions from a psychiatric condition, and moderate-to-marked difficulty with usual stress encountered in the workplace. AR 449-50. The ALJ found that this opinion was not persuasive, reasoning that it was not supported by Dr. Eckstein's own examination notes and inconsistent with the broader record, including Plaintiff's ability to perform activities of daily living. AR 35. Plaintiff contends that the ALJ improperly addressed the medical evidence because he discounted Dr. Eckstein's opinion without substantial evidence.

Regarding "supportability," the ALJ discounted Dr. Eckstein's opinion by finding it not well-supported by her own treatment notes. Dr. Eckstein's examination showed Plaintiff had below average to average cognitive functioning and anxious mood, but intact orientation and a cooperative and socially appropriate demeanor. AR 448. The ALJ concluded that these treatment notes did not support Dr. Eckstein's assessment that Plaintiff would have marked functional difficulties in a workplace. AR 35. For similar reasons as with Dr. Mohandessi's report, the ALJ did not sufficiently explain how Dr. Eckstein's examination notes caused concern about the reliability of the functional assessment. The Commissioner posits that "[i]t is difficult for a reasonable mind to see how these observations support the assessed limitations," but the Commissioner does not explain why reasonable minds could not view Dr. Eckstein's observations as supporting her conclusions, just as the ALJ did not explain this reason. The Court does not infer any conflict between Plaintiff's cooperative behavior in the clinical environment and Dr. Eckstein's opined functional abilities at work. This reason, therefore, is not supported by substantial evidence.

Similarly, regarding "consistency," the ALJ noted that Dr. Eckstein's opinion was inconsistent with the record, citing the same long list of exhibits discussed in reference to Dr. Mohandessi's opinions. AR 35. For the same reasons, the Court concludes that the ALJ did not rely on substantial evidence in finding that the record was inconsistent with Dr. Eckstein's functional assessment. Thus, the ALJ did not properly considered the evidence when determining Dr. Eckstein's opinion was not persuasive.

## C.  Whether Plaintiff's Impairments Meet Listing 12.15

### 1.  Standards

At step three, in order to meet or equal a listing, a claimant's medically determinable impairment must satisfy all of the criteria for a listing. *Kennedy v. Colvin*, 738 F.3d 1172, 1176

(9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)); 20 C.F.R.

§ 404.1529(d)(2)-(3). "Listed impairments set such strict standards because they automatically

end the five-step inquiry, before residual functional capacity is even considered." *Id.* Despite

these strict standards, the ALJ still "must evaluate the relevant evidence before concluding that a

claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is

insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*,

236 F.3d 503, 512 (9th Cir. 2001).

Even if a claimant's impairments do not meet a listing, they may still *equal* a listing. "For

a claimant to qualify for benefits by showing that his unlisted impairment, or combination of

impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in

severity to all the criteria for the one most similar listed impairment." *Zebley*, 493 U.S. 521, 531

(1990). A determination of medical equivalence must rest on objective medical evidence. *Lewis*,

236 F.3d at 514; *see also* SSR 17-2p, 2017 WL 3928306, at *3 (effective March 27, 2017).

Specifically, "[m]edical equivalence must be based on medical findings" and "[a] generalized

assertion of functional problems is not enough to establish disability at step three." *Tackett*, 180

F.3d at 1100 (citation and internal quotations omitted).

Listing 12.15 is used "to evaluate trauma- and stressor-related disorders such as

posttraumatic stress disorder." Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed

Reg. 66,138, 66,159 (Sept. 26, 2016); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(B)(11)

(Listing 12.15); *see also Cranor v. Kijakazi*, 2022 WL 14936052, at *3 (9th Cir. Oct. 26, 2022).

To meet or equal Listing 12.15, a claimant must meet either medical and functional criteria or

medical and "serious and persistent" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

§ 12.00(A)(2). These criteria are known as "Paragraph A" (medical), "Paragraph B" (functional), and "Paragraph C" (serious and persistent) criteria. *See id.*

Paragraph A requires medical documentation of five characteristics, including (1) exposure to actual or threatened death, serious injury, or violence; (2) intrusive memories, dreams, and flashbacks; (3) avoidance of external reminders of the event; (4) disturbance in mood or behavior; and (5) increases in arousal and reactivity, such as sleep disturbance. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.15. To satisfy the paragraph B criteria, Plaintiff must demonstrate that he has one extreme or two marked limitations in four areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* A moderate limitation is one in which a claimant's ability to function in an area independently, appropriately, effectively, and on a sustained basis is "fair." *Id.* § 12.00(F)(2)(c). A marked limitation is one in which a claimant's ability to function in an area independently, appropriately, effectively, and on a sustained basis is "seriously limited." *Id.* § 12.00(F)(2)(d). An extreme limitation means that the claimant cannot function independently, appropriately or effectively on a sustained basis. *Id.* § 12.00(F)(2)(e). Finally, Paragraph C criteria require a showing that the mental disorder is "serious and persistent." *Id.* § 12.15.

### 2.  Analysis

Plaintiff contends that he meets or equals Listing 12.15. First, Plaintiff argues that medical providers' treatment notes establish that Plaintiff meets all the required elements of Paragraph A. The ALJ does not question that Plaintiff was diagnosed with PTSD; the ALJ, for example, considers persuasive the PTSD diagnosis by Suzanne Best, Ph.D. AR 35 (citing AR 300-10). Because Listing 12.15 is used to evaluate PTSD, whether Plaintiff meets or equals the criteria in Paragraph A is thus not in dispute. But "[t]he mere diagnosis of an impairment

listed in Appendix 1 is not sufficient to sustain a finding of disability." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985). Plaintiff may not rely on the diagnosis of his PTSD and other mental impairments as a way to meet or equal the Listing unless he also meets or equals the Paragraph B or Paragraph C criteria.[4]

The ALJ considered Listing 12.15 and found that Plaintiff satisfied neither Paragraph B nor Paragraph C criteria. AR 29-30. Plaintiff does not contest the ALJ's Paragraph C findings. Plaintiff does, however, argue that the ALJ erred in his analysis of the Paragraph B criteria. As noted above, Plaintiff must possess one extreme limitation or two marked limitations in functioning to qualify as disabled under the Paragraph B criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2). The ALJ found that Plaintiff's limitations in the Paragraph B categories were only moderate. AR 29. The Commissioner contends that the ALJ properly evaluated the relevant evidence before concluding that Plaintiff's impairments do not meet the criteria of any listing. *See Lewis*, 236 F.3d at 512.

The Commissioner also asserts that Plaintiff points to no medical opinion showing that the elements of the listing were met, and no doctor opined that Plaintiff met the listing. Plaintiff,

---

[4] Plaintiff argues that, even if it were properly determined that Plaintiff's impairments did not *meet* Listing 12.15, the ALJ failed properly to address whether Plaintiff's impairments *equal* Listing 12.15, and this alone is grounds for reversal. Plaintiff points to *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) to argue that the ALJ's "boilerplate" finding does not show that the ALJ actually considered equivalence. The Ninth Circuit, however, has made clear that an ALJ's failure to make detailed findings at step three does not constitute reversible error provided the ALJ discusses the record in other portions of the decision. *See, e.g.*, *Kruchek v. Barnhart*, 125 F. App'x 825, 827 (9th Cir. 2005); *see also Lewis*, 236 F.3d at 512-13 (distinguishing *Marcia* to determine that the ALJ did not err at step three by "failing to elaborate on his determination that [the claimant's allegedly disabling physical and mental impairments] did not meet or equal" a listing where the ALJ otherwise "discussed and evaluated evidence supporting his conclusion"). Here, the ALJ discussed and evaluated evidence supporting his conclusion of Plaintiff's functional limitations at length in the context of the RFC and medical opinions. *See* AR 34-36. The Court thus concludes that the ALJ considered equivalence.

however, specifically points to Dr. Mohandessi's October 2020 assessments as establishing that Plaintiff is markedly limited in at least two of the Paragraph B categories, including interacting with others and concentration, persistence, and maintaining pace. AR 775-82. Plaintiff argues that, even though Dr. Mohandessi's statement was completed on an older form that did not include all of the updated Paragraph B categories, the overall limitations Dr. Mohandessi described would be consistent with an impairment that would meet or equal the requirements of Listing 12.15.

The ALJ did consider Dr. Mohandessi's opinion and found that it was not well supported and was inconsistent with Plaintiff's ability to perform activities of daily living, such as driving, caring for his children, and cooking. AR 36. The Court, however, has already concluded that the ALJ's explanation for rejecting Dr. Mohandessi's opinion is not supported by substantial evidence.

Because the ALJ improperly discounted the opinions of Drs. Mohandessi and Eckhert, the ALJ did not properly evaluate the relevant medical evidence before concluding that Plaintiff's impairments did not meet or equal a listed impairment. *See Lewis* 236 F.3d at 512. As the discounted doctors' opinions could affect the ALJ's analysis of whether Plaintiff meets the Paragraph B criteria, the ALJ's error is harmful. The Court finds that the ALJ did not adequately assess and must reevaluate whether Plaintiff meets or equals Listing 12.15.

**D.  ALJ's Step Five Finding**

Plaintiff argues that the ALJ erred at step five because the dispositive hypothetical question posed to the VE did not account for all of Plaintiff's limitations. A hypothetical posed to the VE must be complete and "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect

all the claimant's limitations, then the expert's testimony has no evidentiary value." (cleaned up)).

This argument is well taken. Because the ALJ failed properly to evaluate Plaintiff's subjective symptom testimony and the medical opinion testimony, the RFC and hypothetical posed to the VE may not have incorporated all of Plaintiff's limitations. Thus, the ALJ erred in relying on the VE testimony that there were significant jobs in the economy that Plaintiff could perform.

**E.  Remedy**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would have to find the claimant

disabled on remand if the improperly discredited evidence were credited as true. *Id.* The district court need not credit statements as true just because the ALJ made a legal error. *Id.* at 408.

The ALJ's harmful error rests on the ALJ's evaluation that the medical opinion evidence and Plaintiff's subjective complaints were inconsistent with the medical record. These inconsistencies between Plaintiff's testimony and the medical record are "exactly the sort of issues that should be remanded to the agency for further proceedings." *Brown-Hunter*, 806 F.3d at 495 (quotation marks omitted). There are outstanding conflicts and ambiguities between the functional assessments by Drs. Mohandessi and Eckhert, their medical opinions, the agency medical opinions, and Plaintiff's testimony. There are also conflicts regarding how many workdays per month (if any) Plaintiff would miss due to his impairment, whether Plaintiff could maintain attention and concentration, and what degree of public interaction Plaintiff could sustain. As a result, the Court remands for further proceedings.

## CONCLUSION

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 7th day of March, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge